IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION AT COVINGTON

**CIVIL ACTION NO. 2:18-CV-211 (WOB-CJS)**

**ROBERT SCOTT,**                                                      **PLAINTIFF,**

**VS.**                <u>**MEMORANDUM OPINION AND ORDER**</u>

**INTERNATIONAL PAPER CO., ET AL.**                      **DEFENDANTS.**

This is a negligence action that occurred after an electrical inspector suffered an injury following a slip and fall on icy stairs at the International Paper Company's ("IP") paper mill. Robert Scott alleges negligence against IP and its electrical subcontractor who installed the work that Scott inspected, Hatzel & Buehler, Inc. ("H&B"). H&B also filed a third-party complaint against IP's maintenance contractor, Brown & Root Industrial Services, LLC ("B&R").

There are two pending motions for summary judgment before the Court by H&B, (Doc. 66), and IP and B&R, (Doc. 76). The Court has carefully reviewed this matter and concludes that oral argument is unnecessary. The issues being ripe, the Court now issues the following Memorandum Opinion and Order.

*Factual and Procedural Background*

A. <u>Introduction</u>

The facts of this case are not disputed. As a point of reference, IP hired H&B to perform certain electrical work for a

construction project at its paper mill. In turn, H&B was required to hire another electrical inspector from the City of Maysville,[1] Scott, to inspect the work that H&B had done (as part of its agreement with IP). IP also contracts with a maintenance team and production team for upkeep at its paper mill, including B&R, who provides operational maintenance work and maintenance on the equipment at IP's mill.

**B. Incident**

In September 2017, H&B began working on several electrical repairs at IP's paper mill in Maysville, Kentucky. (Docs. 76-3 at 6:1-6; 76-7). For several years, the HVAC unit, also called the Air Makeup Unit, was inoperative at IP's premises, which caused moisture to accumulate in the stairwell. (Doc. 87-4 at 11:14-12:4; 47:19-48:7). When temperatures dropped in the winter months, this moisture turned to ice within this stairwell. Instead of fixing the Air Makeup Unit, IP's maintenance crews were tasked with mitigating the ice buildup by placing propane heaters, salt, and warning signs on the door. (*Id.* at 11:18-12:4; 19:19-24).

Around January 2, 2018, H&B completed electrical work for IP concerning the installation of the "Presoak Make Up Unit". (Doc. 22 at ¶ 19). To ensure safety compliance in the city, Robert Eckhoff, the engineer manager at IP, instructed John Delacruz, an

---

[1] Scott's deposition testimony indicates that he is an independent contractor for the City of Maysville. (Doc. 66-5 at 48:5-19).

electrician of H&B, that H&B had to have another electrician inspect their work on the Presoak Make Up Unit. (Doc. 76-3 at 10:9-13). Delacruz was given Scott's name as a person that could conduct the inspection. (*Id.* at 10:22-24).

In an email correspondence with Scott, Delacruz set up a date for the inspection. (Doc. 76-8). On Saturday, January 6, 2018, H&B was given clearance to conduct the inspection with Scott on a weekend at IP's Maysville paper mill. (Doc. 76-3 at 15:4-16; 19:3-6). When Scott arrived on January 6 at approximately 9:00 a.m., he proceeded to the main reception area to meet Delacruz. (Doc. 76-2 at 69:10-15). From there, Delacruz led Scott to the various inspection sites. (Doc. 76-3 at 18:9-20).

After Scott inspected several areas by taking notes on his clipboard and taking photographs, he and Delacruz eventually entered a stairwell leading from the plant's operation area to look at the controls and conduit associated with the electrical installation.[2] (*Id.* at 22:2-4). The Air Makeup Unit was still inoperative at that time.[3] Scott noticed that the walls were coated with thick ice due to the moisture and cold weather. (Doc. 66-5 at 78:14-22). Scott concedes that the stairwell had adequate lighting, but he did not see any ice on the ground. (*Id.* at 76:2-

---

[2] Scott concedes that the only way to inspect the control box in this area was to proceed down this set of stairs. (Doc. 76-2 at 97:13-16).
[3] The Air Makeup Unit was not part of the work H&B had performed for IP. (Doc. 76-2 at 96:22-24).

3

4; 81:22-23). Nevertheless, Delacruz told Scott they needed to proceed with caution walking down the stairs because of the ice on the walls. (*Id.* at 97:18-98:2).

As they made their way down the stairs, Scott took photographs of some conduits. (Doc. 76-3 at 24:3-4). Scott alleges that he then fell when he reached the bottom of the stairs due to a hidden patch of ice, which caused him to strike his right shoulder.[4] (Doc. 76-2 at 84:10-20). Despite his fall, Scott finished the inspection.[5] (Doc. 76-3 at 25:19-24).

At the conclusion of the inspection, Scott reported the incident to IP employees Tony Mefford and Marc Adams. (*Id.* at 32:10-24). This required Scott to detail his fall in an accident report. (Doc. 66-4).

### C. **Procedural History**

Scott filed his original complaint against both IP and H&B on December 3, 2018, in the Mason County, Kentucky Circuit Court. (Doc. 1-1). Defendants removed the case to the United States District Court for the Eastern District of Kentucky on December 31, 2018, based on diversity jurisdiction. (Doc. 1 at 1).

Shortly after this case was removed, IP filed its answer and H&B filed a motion to dismiss. (Docs. 8, 11). This Court denied

---

[4] Delacruz traversed any icy conditions with no issues and without noticing the ice too. (Doc. 76-3 at 25:2-4).
[5] This included a fifteen-foot climb up a ladder to complete the inspection. (Doc. 76-2 at 109:7-8).

H&B's motion without prejudice, directing the defendant to renew any relevant arguments on summary judgment. (Doc. 21). This Court also directed the parties to discuss settlement, but after they came to an impasse, the plaintiff filed his amended complaint, reasserting his negligence and vicarious liability claims against the defendants. (Docs. 22-23). The defendants filed their respective answers to Scott's amended complaint. (Docs. 24, 26).

### *Crossclaims*

On November 26, 2019, Magistrate Judge Smith granted the defendants' requests to file amended answers to assert crossclaims against each other. (Doc. 39). The defendants' crossclaims assert a claim of indemnification, superseding or comparative negligence, and request an apportionment instruction in the event any liability is assessed on them. (Docs. 40-41). The cross-claimants also filed their answers to these allegations. (Docs. 42-43).

### *Third-party complaint*

Om April 13, 2020, H&B filed a third-party complaint against B&R. (Doc. 51). H&B alleges that B&R was supposed to replace propane in a heater in the stairwell where Scott fell but failed to do so. (*Id.* at ¶ 3). Consequently, H&B similarly asserts a claim of indemnification, superseding or comparative negligence, and requests an apportionment instruction in the event any liability is assessed on them. (*Id.* at ¶¶ 9-11). B&R filed its answer on June 12, 2020. (Doc. 56).

5

*Pending motions*

On December 22, 2020, H&B filed its motion for summary judgment. (Doc. 66). On January 18, 2021, IP and B&R also filed a motion for summary judgment. (Doc. 76).

*Standard of Review*

Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). While the Court views the evidence in the light most favorable to the nonmoving party, the nonmoving party "must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

*Analysis*

A. <u>Scott Lacks Standing</u>

Before a party may assert any claim, they must have standing. This requires plaintiffs to suffer some type of "concrete and particularized injury." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). The defendants argue that Scott does not have standing to pursue this claim because he did not disclose this matter in his previous ongoing bankruptcy schedules. (Docs. 66 at 4-10, 76 6-9).

Scott acknowledges that he filed his Chapter 13 Bankruptcy petition in 2015 and that his claim was still ongoing when he filed

this suit. (Doc. 84-1 at 4). He also concedes that he did not amend his schedules of assets to include this current claim. (*Id.*) But now, Scott relies on authority from the Fourth Circuit to support his proposition that he had standing to bring this claim without amending his schedules. (Doc. 93).

In *Wilson v. Dollar General Corporation*, 717 F.3d 337, 341 (4th Cir. 2013), the Fourth Circuit considered whether the plaintiff as a Chapter 13 debtor retained standing to file his cause of action. This case involved a plaintiff who was fired from his job and filed a charge of discrimination with the EEOC. *Id.* Seventeen days later, he filed for Chapter 13 bankruptcy. *Id.* The plaintiff eventually amended his Schedule B with the bankruptcy court, months before he received his right to sue letter from the EEOC. *Id.* The Court held that a Chapter 13 debtor has standing to bring an action on his own, so long as the individual was pursuing a cause of action *on behalf of the bankruptcy estate*. *Id.* (Emphasis added).

As a threshold matter, Scott's case is clearly distinguishable from *Wilson*. In *Wilson*, the plaintiff filed an EEOC charge, filed for bankruptcy, and then amended his Schedule B with the bankruptcy court to disclose a potential claim before he received his right to sue letter. Here, Scott has attempted to reopen his bankruptcy estate to disclose this lawsuit only after

the defendants filed their motions for summary judgment and his bankruptcy case was closed.

On January 20, 2021, the bankruptcy court entered an order granting Scott's motion to reopen his bankruptcy case. (Doc. 95-2). On February 2, 2021, Scott filed a motion to convert his Chapter 13 case to Chapter 7. (*Id.*) H&B filed a motion for reconsideration the next day after the bankruptcy court reopened the case. (*Id.*) On March 9, 2021, the bankruptcy court denied Scott's motion to convert and H&B's motion for reconsideration. Of relevance, the bankruptcy court stated:

> Reopening is generally considered to be a ministerial act and it's routinely approved without notice or a hearing . . . Just because the case is reopened, that does not mean that therefore the underlying request prompting the motion to reopen automatically has merit. There is a distinction between requesting that a case be reopened under Rule 5010 and section 350(b) of the code on one hand and then addressing the separate request for relief in the reopened case. **The stated purpose of the reopening was to list an asset, whether that asset is listed now or not, the Court does not discern how that could possibly affect the District Court's ruling on the defendant's motion for summary judgment.**

(Doc. 95-1 at 3-4) (emphasis added).

Regarding Scott's motion to convert, the bankruptcy court stated:

> It is clear that the debtors are trying to do, um, a workaround if you will, that appears contrary to clear law. I see no bankruptcy purpose that's served by conversion. **The debtors already have received a discharge, the requested Chapter 7 estate would not include post-petition assets and thus would not include debtors' post-petition *personal injury action* . . . The**

8

> proposed cause of action in the Court's view is contrary to law and the motion to convert, docket number 63, is denied.

(*Id.* at 4) (emphasis added). The bankruptcy court concluded the hearing by clarifying that nothing was before it concerning whether to allow Scott to amend his Schedule B. (*Id.* at 5).

The question here is whether Scott was pursuing his personal injury claim on his own behalf or on the behalf of his estate. Clearly, unlike *Wilson*, the answer is the former.

To start, filing a bankruptcy petition creates a bankruptcy estate. 11 U.S.C. §§ 301, 541(a). The estate is comprised of both tangible and intangible property interests. *Id.* at § 541(a). A bankruptcy petition is signed under penalty of perjury, with a continuing and affirmative duty to disclose all assets, including legal causes of action. *Lewis v. Weyerhaeuser Co.*, 141 Fed.App'x. 420, 424 (6th Cir. 2005) (citation omitted).

Regardless of Scott's reasons, this claim became the property of his bankruptcy estate when he filed this civil action. *See e.g., In re Simmerman*, 463 B.R. 47, 55 (Bankr. S.D. Ohio 2011) ("[I]n Chapter 13 cases, the estate also includes assets acquired by the debtor after the commencement of the case but before the case is closed, dismissed, or converted"); *see also* 11 U.S.C. §§ 541, 1306; *Audau v. Wet Seal Retail, Inc.*, 698 F.3d 902, 904 (6th Cir. 2012) (finding the plaintiff's age discrimination claim became property of the bankruptcy estate when the plaintiff was fired).

9

Despite Scott's argument, he cannot show that he prosecuted this claim for the benefit of his creditors because a Chapter 13 plan can only be modified "before the completion of payments under such plan." 11 U.S.C. § 1329(a). Scott does not contest that his payment plan ended on February 10, 2020, and his bankruptcy case has been reclosed. (Doc. 95-3).

Since his payments under the plan have been completed and cannot be modified under the statute, it is impossible for Scott to act on behalf of the estate. *See* 11 U.S.C. 1329(a)(1), (4). Thus, unlike *Wilson*, Scott continues to pursue this lawsuit on his own behalf, not on behalf of the estate.

This leaves only the possible theory that Scott's claims were abandoned, something Scott does not argue. "After notice and a hearing, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate." 11 U.S.C. § 554(a). In other words, for Scott's negligence claims to be abandoned, "the property must be scheduled for it to be deemed abandoned without notice and a hearing." *In re Pankey*, Bankr. No. 13-0290, 2015 WL 1591716, at *2 (Bankr. N.D. Iowa Apr. 6, 2015); *see also Charboneau v. Jordan*, Civil No. 07-12929, 2010 WL 148664, at *2 (E.D. Mich. Jan. 12, 2010).

Again, Scott concedes that his negligence claim was not scheduled. Moreover, he does not contend that the trustee gave

10

notice of abandonment of his claim. Based on this analysis, Scott's claim against the defendants remain the property of the bankruptcy estate, and he has no standing to pursue it.

## B. **Judicial Estoppel**

Scott's negligence claim is also barred by the doctrine of judicial estoppel.

"The doctrine of judicial estoppel bars a party from asserting a position that is contrary to one the party has asserted under oath in a prior proceeding, where the prior court adopted the contrary position 'either as a preliminary matter or as a part of a final disposition.'" *Eubanks v. CBSK Fin. Grp., Inc.*, 385 F.3d 894, 897 (6th Cir. 2004) (citing *Teledyne Indus., Inc. v. NLRB*, 911 F.2d 1214, 1218 (6th Cir. 1990)).

This is an equitable doctrine used "to preserve the integrity of the courts by preventing a party from abusing the judicial process through cynical gamesmanship, achieving success on one position, then arguing the opposite to suit an exigency of the moment." *Id.*

The Sixth Circuit has outlined the following factors as relevant to this analysis:

> In short, to support a finding of judicial estoppel, we must find that: (1) [Scott] assumed a position that was contrary to the one that she asserted under oath in the bankruptcy proceedings; (2) the bankruptcy court adopted the contrary position either as a preliminary matter or as part of a final disposition; and (3) [Scott's] omission did not result from mistake or inadvertence. In

11

> determining whether [Scott's] conduct resulted from mistake or inadvertence, this court considers whether: (1) [he] lacked knowledge of the factual basis of the undisclosed claims; (2) [he] had a motive for concealment; and (3) the evidence indicates an absence of bad faith. In determining whether there was an absence of bad faith, we will look, in particular, at [Scott's] "attempts" to advise the bankruptcy court of her omitted claims.

*White v. Wyndham Vacation Ownership, Inc.*, 617 F.3d 472, 478 (6th Cir. 2010).

The *White* court held that the plaintiff's sexual harassment claims were indeed barred by judicial estoppel because she failed to list them in her bankruptcy, and she only attempted to correct those filings after defendant filed a motion to dismiss her claims. *Id.* at 481 ("We will not consider favorably the fact that White updated her initial filings after the motion to dismiss was filed. To do so would encourage gamesmanship, since White only fixed her filings after the opposing party pointed out that those filings were inaccurate").

Importantly, the debtor's duty to disclose any potential claims in his schedule of assets and liabilities is "ongoing, meaning a debtor has an express, affirmative duty to disclose all assets, **including contingent and unliquidated claims that arise at any time during the bankruptcy proceeding**." *Davis v. Fiat Chrysler Auto. U.S., LLC*, 747 F. App'x 309, 314 (6th Cir. 2018) (internal quotations and citations omitted) (emphasis added).

In *Davis*, the Sixth Circuit held that plaintiff's claim for a racially hostile work environment was barred because, although she filed for bankruptcy seven years before she filed her employment lawsuit, she had sufficient information to know about her cause of action ***before her bankruptcy was discharged***, and she failed to disclose it. *Id.* at 314-15.

Likewise, in *Kimberlin v. Dollar General Corporation*, 520 F. App'x 312, 315-16 (6th Cir. 2013), the Sixth Circuit affirmed the dismissal of plaintiff's employment claim because, although she was terminated during the repayment period of her bankruptcy plan, she failed to amend her schedules to reflect the potential suit before the bankruptcy closed. The Court noted that applying "judicial estoppel under these circumstances recognizes the importance of the bankruptcy debtor's affirmative and ongoing duty to disclose assets, including unliquidated litigation interests." *Id.* at 314.

Under this authority, Scott's negligence claim is barred by judicial estoppel. Scott filed for Chapter 13 bankruptcy, through counsel, on January 26, 2015. (Doc. 66-7 at 70). Concurrent with this petition, Scott filed a Schedule B – Personal Property, which required him to list "[c]ontingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims." (*Id.* at 12). Scott then signed his bankruptcy schedules under oath and penalty of perjury. (*Id.* at

13

33). His Chapter 13 Plan was confirmed on May 30, 2015. (Doc. 66-8 at 3).

Three years after this Plan was approved, Scott filed this negligence claim in state court on December 8, 2018. (Doc. 1-1). At that time, Scott's bankruptcy case was still proceeding. *See* (Doc. 66-8). On February 27, 2020, the bankruptcy court ordered a discharge of Scott's debt. (Doc. 66-9). The trustee's final report reveals that $23,275.83 of Scott's unsecured claims were discharged. (Doc. 66 at ¶ 10). The bankruptcy docket reveals that Scott's case was closed on June 10, 2020, one year and six months after this lawsuit was filed. (Doc. 66-9).

At no time during the above period did Scott disclose his claims against the defendants to the bankruptcy court. Instead, it was not until January 20, 2021—after Scott's bankruptcy was closed and after defendants filed their motions for summary judgment in this matter—that Scott moved to reopen his bankruptcy case to disclose his claims. (Doc. 84-5 at ¶¶ 8-9).

In short, every factor discussed above weighs in favor of applying judicial estoppel.

Scott argues that since his fall did not occur until after he filed his schedules with the bankruptcy court, he did not know he had to report this to the trustee. (Doc. 84-1 at 4). He also argues that his "failure to amend his bankruptcy schedule after this claim arose, almost two years after the initial bankruptcy filing, was

14

due to carelessness or inadvertent error and was not an intentional or strategic concealment." (*Id.* at 7-8). This, however, ignores the duty of disclosure as an ongoing one, and Scott does not dispute that this case was filed while his bankruptcy was pending. *See e.g., Kimberlin*, 520 F. App'x. at 314.

Scott also argues that he relied on his prior bankruptcy attorney who was unaware of Scott's duty to disclose. (Docs. 84-1 at 4; 84-5 at ¶ 5). This argument has also been repeatedly rejected by the Sixth Circuit because debtors sign their bankruptcy petitions under penalty of perjury and are responsible for updating their filings as their assets change. *See Newman*, 751 F. App'x at 815; *White*, 617 F.3d at 483-84; *Lewis*, 141 F. App'x 427.

Finally, Scott argues that he reopened his bankruptcy case with a new attorney to correct his "carelessness." (Doc. 84-1 at 9). But again, the Sixth Circuit does not consider such a belated disclosure to weigh against estoppel, particularly where disclosure occurs only after the failure to disclose has been raised as a defense in the proceeding in question. *White*, 617 F.3d at 481; *see also Hayden v. GR Spring & Stamping, Inc.*, Civil No. 5:13-cv-120-JMH, 2013 WL 2382831, at *4 (E.D. Ky. May 30, 2013) ("In the case, there is no question that Williams made absolutely no effort, successful or otherwise, to amend her bankruptcy schedules until May 16, 2013, six days after Defendant filed its motion to dismiss her as a party . . . Unfortunately, under Sixth

15

Circuit precedent, this effort is too little, too late").

Therefore, Scott's claims are barred entirely by judicial estoppel.[6]

Thus, having reviewed this matter, and the Court being advised,

**IT IS ORDERED** that the defendants' motions for summary judgment (Docs. 66, 76) be, and are hereby, **GRANTED**. A separate judgment shall enter concurrently herewith.

This 1st day of June 2021.



Signed By:
*William O. Bertelsman* W.O.B
United States District Judge

---

[6] The failure of Scott's claim nullifies the crossclaims and third-part claims.